**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

In re:

MICHAEL T. SHEPARDSON,                          Case No.: 6:19-bk-04573-KSJ
                                                                 Chapter 7

       Debtor.

_____/

**MOTION FOR RELIEF FROM AUTOMATIC STAY**

**(Real Property located at 1635 Elizabeth's Walk, Winter Park, Florida 32789)**

---

**NOTICE OF OPPORTUNITY TO
OBJECT AND REQUEST FOR HEARING**

Pursuant to Local Rule 2002-4, the Court will consider the relief requested in this paper without further notice or hearing unless a party in interest files a response within twenty-one (21) days from the date set forth on the attached proof of service, plus an additional three days for service if any party was served by U.S. Mail.

If you object to the relief requested in this paper, you must file a response with the Clerk of the Court at 400 W. Washington Street, Suite 5100, Orlando, FL 32801, and serve a copy on the movant's attorney, Casey Reeder Lennox, Lennox Law, P.A., 5100 W. Kennedy Blvd., Suite 120, Tampa, FL 33609, and any other appropriate persons within the time allowed. If you file and serve a response within the time permitted, the Court will either schedule and notify you of a hearing or consider the response and grant or deny the relief requested without a hearing.

If you do not file a response within the time permitted, the Court will consider that you do not oppose the relief requested in the paper, will proceed to consider the paper without further notice or hearing, and may grant the relief requested.

---

VALLEY NATIONAL BANK, as successor by merger to USAMERIBANK   ("Valley" or "Movant"), by undersigned counsel, and pursuant to 11 U.S.C. § 362(d), and Fed.R.Bankr.P. 4001, hereby seeks the entry of an order granting relief from the automatic stay for the purpose

of enforcing its *in rem* rights with respect to the real property owned by Debtor, Michael T. Shepardson (the "Debtor"), and located at 1635 Elizabeth's Walk, Winter Park, Florida 32789 (the "Real Property"). In support, Valley states as follows:

### Background

1.     This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334. This matter is a "core" proceeding within the meaning of 28 U.S.C. § 157.

2.     On July 15, 2019, the Debtor filed a voluntary petition under Chapter 7 of the United States Bankruptcy Code (the "Petition Date").

3.     Arvind Mahendru is the duly appointed chapter 7 Trustee (the "Trustee").

4.     On February 17, 2015, PACA Foods, LLC ("PACA")[1], as borrower, executed and delivered to Valley's predecessor in interest, USAmeriBank ("USAB"), a U.S. Small Business Administration Note in the original principal amount of $2,610,000.00 (the "Note"). A copy of the Note is attached hereto as **Exhibit "A"**.

5.     On February 17, 2015, the Debtor executed and delivered to USAB a U.S. Small Business Administration Unconditional Guarantee of the Note (the "Guarantee"). A copy of the Guarantee is attached hereto as **Exhibit "B"**.

6.     On February 17, 2015, the Debtor executed and delivered to USAB a Third Real Estate Mortgage (the "Mortgage" and together with the Note and Guarantee, the "Loan Documents"), to secure his obligations under the Guarantee. The Mortgage was recorded on February 23, 2015, in Official Records Book 10878, Page 8043, in the amount of $2,610,000.00, in the Public Records of Orange County, Florida. A copy of the Mortgage is attached hereto as **Exhibit "C"**.

---

[1] The Debtor is a managing member of PACA.

2

7.      The Mortgage created a lien on the Real Property, which is more particularly described as:

> Lot 45, WINDSONG – ELIZABETH'S WALK, according to the map or plat thereof as recorded in Plat Book 43, Page 81, Public Records of Orange County, Florida.

8.      PACA is in default of the Note and the Debtor is in default of the Guarantee.

9.      There have been no payments made to Valley under the Note since January, 2018.

10.     Valley is the owner and holder of the Loan Documents and maintains a perfected mortgage lien on the Real Property.

11.     Pre-petition, Valley duly issued notice of default and notice of acceleration of all amounts due under the Note.

12.     Pre-petition, Valley instituted state court litigation to, *inter alia*, collect the amounts due under the Note and foreclose its mortgage lien on the Real Property.  *See Valley National Bank v. PACA Foods, LLC, et al.,* Case No.: 2018-CA-008717-O (9th Judicial Circuit; Orange County, Florida) (the "State Court Litigation").

13.     As of July 24, 2019, the principal amount due under the Note was $1,899,851.10, plus accrued pre-judgment interest of $224,854.52, for a total of $2,124,705.62 (exclusive of pre-petition recoverable expenses incurred by Valley and pre-petition attorneys' fees and costs incurred by Valley), which amount has been reduced to judgment in favor of Valley and against PACA and Micacol Holdings, LLC (another guarantor of the amounts due to Valley under the Note).  A copy of the *Order Granting in Part Plaintiff's Motion for Summary Final Judgment as to Counts I-V and VIII-XI of the Complaint and Summary Final Judgment Against Defendant, PACA Foods, LLC (as to Counts I and VIII) and against Defendant, Micacol Holdings, LLC (as to Counts IV and XI)*, entered in the State Court Litigation on August 1, 2019 (the "Partial Judgment"), is attached hereto as **Exhibit "D"**.

14.     Valley estimates the value of the Real Property to be approximately $750,000.00, pursuant to the Debtor's Schedule A.

15.     The Real Property has not been claimed as exempt, pursuant to the Debtor's Schedule C.

16.     As of the date of this Motion, the Trustee has not abandoned the Real Property.

17.     In his *Statement of Intention for Individuals Filing Under Chapter 7*, the Debtor has indicated his intent to surrender the Real Property. *See*, Affidavit as to Surrendered Property attached hereto as **Exhibit "E"**.

## Relief Requested

18.     Through this Motion, Valley seeks relief from the automatic stay pursuant to 11 U.S.C. § 362(d) in order to enforce its *in rem* rights with respect to the Real Property.

19.     The Debtor is the record title holder of the Real Property.

20.     The Debtor and the estate lack equity in the Real Property.

21.     The Debtor is in default under the terms of the Guarantee and the Mortgage for failure to make the payment due under the Note in February, 2018, and all payments due thereafter (including upon acceleration).  As such, Valley lacks adequate protection of its interest in the Real Property.

22.     As the Debtor has indicated his intent to surrender the Real Property, Valley submits that cause exists under 11 U.S.C. § 362(d)(1) for the entry of an order lifting the automatic stay to permit Valley to proceed to enforce its *in rem* rights with respect to the Real Property.

23.    Valley has incurred costs and attorneys' fees in connection with this case and will incur additional fees, costs and expenses in foreclosing the Mortgage, all of which additional sums are secured by the lien of the Mortgage.

24.    Finally, Valley requests that the Court waive the 14-day stay period imposed by Fed.R.Bankr.P. 4001(a)(3), so that it may proceed to enforce its rights in the Real Property without delay.

WHEREFORE, VALLEY NATIONAL BANK as successor by merger to USAMERIBANK, respectfully requests the entry of an order (i) granting this Motion, (ii) lifting the automatic stay for the reasons stated above, and (iii) granting such other and further relief as the Court deems just and appropriate.

Dated this 12th day of September, 2019.

/s/ Casey Reeder Lennox
Andrew W. Lennox        (FBN: 937681)
alennox@lennoxlaw.com
Casey Reeder Lennox      (FBN: 041986)
clennox@lennoxlaw.com
LENNOX LAW, P.A.
5100 W. Kennedy Blvd., Suite 120
Tampa, Florida 33609
Tel:  813-831-3800
Fax: 813-749-9456
*Attorneys for Valley National Bank*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing Motion for Relief from Automatic Stay has been furnished via CM/ECF electronic service to Amy Denton Harris, Stichter Riedel Blain & Postler, P.A., 110 E. Madison Street, Suite 200, Tampa, FL 33602; Arvind Mahendru, Trustee, 5703 Red Bug Lake Road, Suite 284, Winter Springs, FL 32708; and to those other parties receiving electronic notices via CM/ECF in this case; and via U.S. Mail to the Debtor, Michael T. Shepardson, 2837 Lake Baldwin Lane, B302, Orlando, FL 32814 on this 12th day of September, 2019.

/s/ Casey Reeder Lennox
Attorney

# Exhibit "A"



U.S. Small Business Administration

# NOTE

THE GUARANTEED PORTION OF THE OUTSTANDING PRINCIPAL BALANCE OF THIS NOTE HAS BEEN TRANSFERRED TO A REGISTERED HOLDER FOR VALUE

DATED _____ 2/19/15 _____

BY _____

| SBA Loan # | ▇▇▇50-05 |
|---|---|
| SBA Loan Name | PACA Foods, LLC |
| Date | February 17, 2015 |
| Loan Amount | $2,610,000.00 |
| Interest Rate | Prime rate plus 2.00% |
| Borrower | PACA Foods, LLC |
| Operating Company | |
| Lender | USAmeriBank |

WE CERTIFY THIS DOCUMENT TO BE A TRUE AND CORRECT COPY OF THE ORIGINAL NOTE

DATED 2/19/15

BY _____

1.   PROMISE TO PAY:

In return for the Loan, Borrower promises to pay to the order of Lender the amount of

Two Million Six Hundred Ten Thousand and No/100 _____ Dollars,

interest on the unpaid principal balance, and all other amounts required by this Note.

2.   DEFINITIONS:

"Collateral" means any property taken as security for payment of this Note or any guarantee of this Note.

"Guarantor" means each person or entity that signs a guarantee of payment of this Note.

"Loan" means the loan evidenced by this Note.

"Loan Documents" means the documents related to this loan signed by Borrower, any Guarantor, or anyone who pledges collateral.

"SBA" means the Small Business Administration, an Agency of the United States of America.

3.  PAYMENT TERMS:

Borrower must make all payments at the place Lender designates. The payment terms for this Note are:

1.  Maturity: This Note will mature in 10 years from date of Note.

2.  Repayment Terms:

The interest rate on this Note will fluctuate. The initial interest rate is 5.25% per year. This initial rate is the Prime Rate in effect on the first business day of the month in which SBA received the loan application, plus 2.00%. The initial interest rate must remain in effect until the first change period begins unless reduced in accordance with SOP 50 10.

Borrower must pay one payment of interest only on the disbursed principal balance one month from the month this Note is dated; payment must be made on the first calendar day in the month it is due.

Borrower must pay principal and interest payments of $28,003.13 every month, beginning two months from the month this Note is dated; payments must be made on the first calendar day in the months they are due.

Lender will apply each installment payment first to pay interest accrued to the day Lender receives the payment, then to bring principal current, then to pay any late fees, and will apply any remaining balance to reduce principal.

The interest rate will be adjusted quarterly (the "change period").

The "Prime Rate" is the Prime Rate in effect on the first business day of the month (as published in the Wall Street Journal newspaper) in which SBA received the application, or any interest rate change occurs. Base Rates will be rounded to two decimal places with .004 being rounded down and .005 being rounded up.

The adjusted interest rate will be 2.00% above the Prime Rate. Lender will adjust the interest rate on the first calendar day of each change period. The change in interest rate is effective on that day whether or not Lender gives Borrower notice of the change.

The spread as identified in the Note may not be changed during the life of the Loan without the written agreement of the Borrower.

For variable rate loans, the interest rate adjustment period may not be changed without the written consent of the Borrower.

Lender must adjust the payment amount at least annually as needed to amortize principal over the remaining term of the note.

If SBA purchases the guaranteed portion of the unpaid principal balance, the interest rate becomes fixed at the rate in effect at the time of the earliest uncured payment default. If there is no uncured payment default, the rate becomes fixed at the rate in effect at the time of purchase.

4.  DEFAULT:

Borrower is in default under this Note if Borrower does not make a payment when due under this Note, or if Borrower or Operating Company:

A.  Fails to do anything required by this Note and other Loan Documents;

B.  Defaults on any other loan with Lender;

C.  Does not preserve, or account to Lender's satisfaction for, any of the Collateral or its proceeds;

D.  Does not disclose, or anyone acting on their behalf does not disclose, any material fact to Lender or SBA;

E.  Makes, or anyone acting on their behalf makes, a materially false or misleading representation to Lender or SBA;

F.  Defaults on any loan or agreement with another creditor, if Lender believes the default may materially affect Borrower's ability to pay this Note;

G.  Fails to pay any taxes when due;

H.  Becomes the subject of a proceeding under any bankruptcy or insolvency law;

I.  Has a receiver or liquidator appointed for any part of their business or property;

J.  Makes an assignment for the benefit of creditors;

K.  Has any adverse change in financial condition or business operation that Lender believes may materially affect Borrower's ability to pay this Note;

L.  Reorganizes, merges, consolidates, or otherwise changes ownership or business structure without Lender's prior written consent; or

M.  Becomes the subject of a civil or criminal action that Lender believes may materially affect Borrower's ability to pay this Note.

5.  LENDER'S RIGHTS IF THERE IS A DEFAULT:

Without notice or demand and without giving up any of its rights, Lender may:

A.  Require immediate payment of all amounts owing under this Note;

B.  Collect all amounts owing from any Borrower or Guarantor;

C.  File suit and obtain judgment;

D.  Take possession of any Collateral; or

E.  Sell, lease, or otherwise dispose of, any Collateral at public or private sale, with or without advertisement.

6.  LENDER'S GENERAL POWERS:

Without notice and without Borrower's consent, Lender may:

A.  Bid on or buy the Collateral at its sale or the sale of another lienholder, at any price it chooses;

B.  Incur expenses to collect amounts due under this Note, enforce the terms of this Note or any other Loan Document, and preserve or dispose of the Collateral. Among other things, the expenses may include payments for property taxes, prior liens, insurance, appraisals, environmental remediation costs, and reasonable attorney's fees and costs. If Lender incurs such expenses, it may demand immediate repayment from Borrower or add the expenses to the principal balance;

C.  Release anyone obligated to pay this Note;

D.  Compromise, release, renew, extend or substitute any of the Collateral; and

E.  Take any action necessary to protect the Collateral or collect amounts owing on this Note.

7.   WHEN FEDERAL LAW APPLIES:

When SBA is the holder, this Note will be interpreted and enforced under federal law, including SBA regulations. Lender or SBA may use state or local procedures for filing papers, recording documents, giving notice, foreclosing liens, and other purposes. By using such procedures, SBA does not waive any federal immunity from state or local control, penalty, tax, or liability. As to this Note, Borrower may not claim or assert against SBA any local or state law to deny any obligation, defeat any claim of SBA, or preempt federal law.

8.   SUCCESSORS AND ASSIGNS:

Under this Note, Borrower and Operating Company include the successors of each, and Lender includes its successors and assigns.

9.   GENERAL PROVISIONS:

A.   All individuals and entities signing this Note are jointly and severally liable.

B.   Borrower waives all suretyship defenses.

C.   Borrower must sign all documents necessary at any time to comply with the Loan Documents and to enable Lender to acquire, perfect, or maintain Lender's liens on Collateral.

D.   Lender may exercise any of its rights separately or together, as many times and in any order it chooses. Lender may delay or forgo enforcing any of its rights without giving up any of them.

E.   Borrower may not use an oral statement of Lender or SBA to contradict or alter the written terms of this Note.

F.   If any part of this Note is unenforceable, all other parts remain in effect.

G.   To the extent allowed by law, Borrower waives all demands and notices in connection with this Note, including presentment, demand, protest, and notice of dishonor. Borrower also waives any defenses based upon any claim that Lender did not obtain any guarantee; did not obtain, perfect, or maintain a lien upon Collateral; impaired Collateral; or did not obtain the fair market value of Collateral at a sale.

10. STATE-SPECIFIC PROVISIONS:

Borrower shall promptly pay all documentary stamp taxes, intangible taxes and/or similar taxes on this transaction whether assessed at closing or arising from time to time, together with any interest and/or penalties relating thereto. Florida Documentary Stamp Tax in the amount of $9,135 is being paid concurrently with the execution of this Note.

11. BORROWER'S NAME(S) AND SIGNATURE(S):

By signing below, each individual or entity becomes obligated under this Note as Borrower.

PACA Foods LLC,
a Florida limited liability company

By: _____

Michael T. Shepardson, Manager

## ADDENDUM

This Addendum ("**Addendum**") to U.S. Small Business Administration Note, SBA Form 147, is attached to and made a part of that certain U.S. Small Business Administration Note (SBA Loan #████50-05), dated February 17, 2015 (the "**Note**") executed by **PACA FOODS LLC**, a Florida limited liability company ("**Borrower**"), in favor **USAmeriBank**, a Florida banking corporation ("**Lender**").

Additional Payment Terms. The following language is included at the end of Section 3 of the Note:

### Loan Prepayment:

Notwithstanding any provision in this Note to the contrary:

**Borrower may prepay this Note.** Borrower may prepay 20 percent or less of the unpaid principal balance at any time without notice. If Borrower prepays more than 20 percent and the Loan has been sold on the secondary market, Borrower must:

a.    Give Lender written notice;

b.    Pay all accrued interest; and

c.    If the prepayment is received less than 21 days from the date Lender receives the notice, pay an amount equal to 21 days' interest from the date lender receives the notice, less any interest accrued during the 21 days and paid under subparagraph b., above.

If Borrower does not prepay within 30 days from the date Lender receives the notice, Borrower must give Lender a new notice.

All remaining principal and accrued interest is due and payable 10 years from date of Note.

**Late Charge:** If a payment on this Note is more than 10 days late, Lender may charge Borrower a late fee of up to 5.00% of the unpaid portion of the regularly scheduled payment.

### *BORROWER*:

PACA FOODS LLC,
a Florida limited liability company

By: *Michael T. Shepardson*

Michael T. Shepardson, Manager

# Exhibit "B"



U.S. Small Business Administration

# UNCONDITIONAL GUARANTEE

| | |
|---|---|
| SBA Loan # | ▮▮▮▮50-05 |
| SBA Loan Name | PACA Foods, LLC |
| Guarantor | Michael T. Shepardson |
| Borrower | PACA Foods, LLC |
| Lender | USAmeriBank |
| Date | February 17, 2015 |
| Note Amount | $2,610,000 |

1.  GUARANTEE:

Guarantor unconditionally guarantees payment to Lender of all amounts owing under the Note. This Guarantee remains in effect until the Note is paid in full. Guarantor must pay all amounts due under the Note when Lender makes written demand upon Guarantor. Lender is not required to seek payment from any other source before demanding payment from Guarantor.

2.  NOTE:

The "Note" is the promissory note dated _____February 17, 2015_____ in the principal amount of
_____Two Million Six Hundred Ten Thousand and No/100_____ Dollars,
from Borrower to Lender. It includes any assumption, renewal, substitution, or replacement of the Note, and multiple notes under a line of credit.

3.  DEFINITIONS:

"Collateral" means any property taken as security for payment of the Note or any guarantee of the Note.

"Loan" means the loan evidenced by the Note.

"Loan Documents" means the documents related to the Loan signed by Borrower, Guarantor or any other guarantor, or anyone who pledges Collateral.

"SBA" means the Small Business Administration, an Agency of the United States of America.

4.   LENDER'S GENERAL POWERS:

Lender may take any of the following actions at any time, without notice, without Guarantor's consent, and without making demand upon Guarantor:

A.   Modify the terms of the Note or any other Loan Document except to increase the amounts due under the Note;

B.   Refrain from taking any action on the Note, the Collateral, or any guarantee;

C.   Release any Borrower or any guarantor of the Note;

D.   Compromise or settle with the Borrower or any guarantor of the Note;

E.   Substitute or release any of the Collateral, whether or not Lender receives anything in return;

F.   Foreclose upon or otherwise obtain, and dispose of, any Collateral at public or private sale, with or without advertisement;

G.   Bid or buy at any sale of Collateral by Lender or any other lienholder, at any price Lender chooses; and

H.   Exercise any rights it has, including those in the Note and other Loan Documents.

These actions will not release or reduce the obligations of Guarantor or create any rights or claims against Lender.

5.   FEDERAL LAW:

When SBA is the holder, the Note and this Guarantee will be construed and enforced under federal law, including SBA regulations. Lender or SBA may use state or local procedures for filing papers, recording documents, giving notice, foreclosing liens, and other purposes. By using such procedures, SBA does not waive any federal immunity from state or local control, penalty, tax, or liability. As to this Guarantee, Guarantor may not claim or assert any local or state law against SBA to deny any obligation, defeat any claim of SBA, or preempt federal law.

6.   RIGHTS, NOTICES, AND DEFENSES THAT GUARANTOR WAIVES:

To the extent permitted by law,

A.   Guarantor waives all rights to:
   1)   Require presentment, protest, or demand upon Borrower;
   2)   Redeem any Collateral before or after Lender disposes of it;
   3)   Have any disposition of Collateral advertised; and
   4)   Require a valuation of Collateral before or after Lender disposes of it.

B.   Guarantor waives any notice of:
   1)   Any default under the Note;
   2)   Presentment, dishonor, protest, or demand;
   3)   Execution of the Note;
   4)   Any action or inaction on the Note or Collateral, such as disbursements, payment, nonpayment, acceleration, intent to accelerate, assignment, collection activity, and incurring enforcement expenses;
   5)   Any change in the financial condition or business operations of Borrower or any guarantor;
   6)   Any changes in the terms of the Note or other Loan Documents, except increases in the amounts due under the Note; and
   7)   The time or place of any sale or other disposition of Collateral.

C.   Guarantor waives defenses based upon any claim that:
   1)   Lender failed to obtain any guarantee;
   2)   Lender failed to obtain, perfect, or maintain a security interest in any property offered or taken as Collateral;
   3)   Lender or others improperly valued or inspected the Collateral;
   4)   The Collateral changed in value, or was neglected, lost, destroyed, or underinsured;

5) Lender impaired the Collateral;

6) Lender did not dispose of any of the Collateral;

7) Lender did not conduct a commercially reasonable sale;

8) Lender did not obtain the fair market value of the Collateral;

9) Lender did not make or perfect a claim upon the death or disability of Borrower or any guarantor of the Note;

10) The financial condition of Borrower or any guarantor was overstated or has adversely changed;

11) Lender made errors or omissions in Loan Documents or administration of the Loan;

12) Lender did not seek payment from the Borrower, any other guarantors, or any Collateral before demanding payment from Guarantor:

13) Lender impaired Guarantor's suretyship rights;

14) Lender modified the Note terms, other than to increase amounts due under the Note. If Lender modifies the Note to increase the amounts due under the Note without Guarantor's consent, Guarantor will not be liable for the increased amounts and related interest and expenses, but remains liable for all other amounts;

15) Borrower has avoided liability on the Note; or

16) Lender has taken an action allowed under the Note, this Guarantee, or other Loan Documents.

### 7.   DUTIES AS TO COLLATERAL:

Guarantor will preserve the Collateral pledged by Guarantor to secure this Guarantee. Lender has no duty to preserve or dispose of any Collateral.

### 8.   SUCCESSORS AND ASSIGNS:

Under this Guarantee, Guarantor includes heirs and successors, and Lender includes its successors and assigns.

### 9.   GENERAL PROVISIONS:

A.   ENFORCEMENT EXPENSES. Guarantor promises to pay all expenses Lender incurs to enforce this Guarantee, including, but not limited to, attorney's fees and costs.

B.   SBA NOT A CO-GUARANTOR. Guarantor's liability will continue even if SBA pays Lender. SBA is not a co-guarantor with Guarantor. Guarantor has no right of contribution from SBA.

C.   SUBROGATION RIGHTS. Guarantor has no subrogation rights as to the Note or the Collateral until the Note is paid in full.

D.   JOINT AND SEVERAL LIABILITY. All individuals and entities signing as Guarantor are jointly and severally liable.

E.   DOCUMENT SIGNING. Guarantor must sign all documents necessary at any time to comply with the Loan Documents and to enable Lender to acquire, perfect, or maintain Lender's liens on Collateral.

F.   FINANCIAL STATEMENTS. Guarantor must give Lender financial statements as Lender requires.

G.   LENDER'S RIGHTS CUMULATIVE, NOT WAIVED. Lender may exercise any of its rights separately or together, as many times as it chooses. Lender may delay or forgo enforcing any of its rights without losing or impairing any of them.

H.   ORAL STATEMENTS NOT BINDING. Guarantor may not use an oral statement to contradict or alter the written terms of the Note or this Guarantee, or to raise a defense to this Guarantee.

I.   SEVERABILITY. If any part of this Guarantee is found to be unenforceable, all other parts will remain in effect.

J.   CONSIDERATION. The consideration for this Guarantee is the Loan or any accommodation by Lender as to the Loan.

10. STATE-SPECIFIC PROVISIONS:

None

11. GUARANTOR ACKNOWLEDGMENT OF TERMS.

Guarantor acknowledges that Guarantor has read and understands the significance of all terms of the Note and this Guarantee, including all waivers.

12. GUARANTOR NAME(S) AND SIGNATURE(S):

By signing below, each individual or entity becomes obligated as Guarantor under this Guarantee.

Michael T. Shepardson

# Exhibit "C"

DOC # 20150091734 B: 10878 P: 8043
02/23/2015 08:10 AM   Page 1 of 9
Rec Fee: $78.00
Deed Doc Tax: $0.00
Mortgage Doc Tax: $9,135.00
Intangible Tax: $5,220.00
Martha O. Haynie, Comptroller
Orange County, FL
Ret To: SIMPLIFILE LC

*Prepared by and after recording
Return to:*

Adam S. Woodruff, Esquire
Shutts & Bowen LLP
4301 W. Boy Scout Boulevard
Suite 300
Tampa, Florida 33607

---

*Recording Data Above*

**Loan No.:** ▮▮▮▮4100

### THIRD REAL ESTATE MORTGAGE

EFFECTIVE DATE:             February 17, 2015

MORTGAGOR:             Michael T. Shepardson, a single man
ADDRESS:             1635 Elizabeths Walk
             Winter Park, Florida 32789

MORTGAGEE:             USAmeriBank, a Florida banking corporation
ADDRESS:             Post Office Box 172927
             Tampa, Florida 33672

AMOUNT OF
INITIAL INDEBTEDNESS:             $2,610,000

1.    Background. Mortgagee (as defined below) made a $2,610,000 loan ("**Loan**") to PACA Foods LLC, a Florida limited liability company ("**PACA Foods**") as evidenced by that certain U.S. Small Business Administration Note of even date herewith, executed by PACA Foods in favor of Mortgagee, in the original principal amount of $2,610,000.00 (including all renewals, extensions, replacements or modifications thereof, the "**Note**"). Mortgagor (as defined below) has an equity interest in PACA Foods and will benefit from the Loan being made by Mortgagee to PACA Foods. As a condition to Mortgagee's extension of the Loan, Mortgagee is requiring Mortgagor guarantee the payment and performance obligations of PACA Foods under the Note and all other documents related to the Loan pursuant to that certain U.S. Small Business Administration Unconditional Guarantee of even date herewith (as may be amended, "**Guaranty**"), executed by Mortgagor in favor of Mortgagee.  Mortgagor's obligations under the Guaranty are secured by this Mortgage.

2.    Mortgage. In consideration of ten dollars ($10.00) and other valuable considerations received by MICHAEL T. SHEPARDSON, a single man ("**Mortgagor**"), Mortgagor effective as of the Effective Date mortgages, hypothecates, pledges and assigns to USAMERIBANK, a Florida banking corporation ("**Mortgagee**"), the real property located in Orange County, Florida legally described on the attached **Exhibit "A"** ("**Mortgaged Property**") for the purposes identified herein.

3.    Secured Indebtedness. This Third Real Estate Mortgage (this "**Mortgage**") secures Mortgagor's obligations to Mortgagee under the Guaranty.

4.    Payment of Secured Indebtedness. Mortgagor shall comply with all terms and conditions of this Mortgage, the Guaranty or any other documents delivered by Mortgagor in connection with the Loan.  Mortgagor shall pay promptly when due all amounts owed by Mortgagor under the Guaranty and perform all other obligations of Mortgagor under the Guaranty or any other documents related to the Loan.

5.    Escrow for Taxes and Insurance. At any time that Mortgagee may so require, Mortgagor shall pay to Mortgagee on the day monthly installments of principal or interest are payable under the Note, until the Note is paid in full, a sum ("**Funds**") equal to one-twelfth of: (a) the current yearly taxes and assessments which may be levied on the Mortgaged Property, and (b) the yearly premium installments for fire and other hazard insurance, rent loss insurance and such other insurance covering the Mortgaged Property as Mortgagee may require, all as reasonably estimated initially and from time to time by Mortgagee on the basis of assessments and bills and reasonable estimates thereof.  If the Funds held by Mortgagee exceed the amounts permitted to be held by applicable law, Mortgagee shall account to Mortgagor for the excess Funds in accordance with the requirements of applicable law.  If Funds held by Mortgagee at any time are insufficient to pay when due the yearly taxes and assessments and/or the yearly insurance premiums covering the Mortgaged Property, Mortgagee shall notify Mortgagor in writing, and Mortgagor shall pay to Mortgagee any Funds necessary to make up the deficiency.  Mortgagor shall make up such deficiency in no more than twelve (12) monthly payments, at Mortgagee's sole discretion.

6.    Title Covenants.  Mortgagor covenants that (i) Mortgagor is lawfully seized of the Mortgaged Property and has the right to mortgage, grant, convey and assign the Mortgaged Property to Mortgagee, and (ii) Mortgagor will warrant and defend same against all lawful claims and demands of all persons whomsoever.  Mortgagor covenants that Mortgagor shall not further encumber any interest in any portion of Mortgaged Property without the written consent of Mortgagee, which consent may be granted or denied in Mortgagee's sole discretion.

7.    Charges and Liens. Mortgagor shall pay, when due, the claims of all persons supplying labor or materials to or in connection with the Mortgaged Property.  Mortgagor shall not permit any lien inferior to the Mortgage to be perfected against the Mortgaged Property, without Mortgagee's prior written consent, which consent may be granted or denied in Mortgagee's sole discretion.

8.    Improvements and Fixtures.  Mortgagor hereby grants Mortgagee a security interest in all buildings, improvements, fixtures or appurtenances now or hereafter erected or existing upon the Mortgaged Property, including, but, not limited to, all elevators and all gas, steam, electric, water, cooking, refrigerating, lighting, plumbing, heating, air conditioning, ventilation, and power systems, machines, appliances, fixtures, and appurtenances, even though they may be detached or detachable, all of which shall be deemed part of the Mortgaged Property.

2

9.     Maintenance and Repair.     Mortgagor shall not commit waste or permit any impairment or deterioration of the Mortgaged Property.   Mortgagor shall not permit the demolition, destruction or removal of any portion of the Mortgaged Property without the prior written consent of Mortgagee.   Mortgagor shall maintain the Mortgaged Property in good condition and repair, and Mortgagor shall comply with all laws, ordinances, regulations and requirements of any governmental body applicable to the Mortgaged Property.   If Mortgagor fails to do so, then Mortgagee, without waiving the option to foreclose, may take some or all measures Mortgagee reasonably deems necessary or desirable for the maintenance, repair, preservation, or protection of the Mortgaged Property, and any expenses reasonably incurred by Mortgagee in so doing shall become part of the indebtedness secured by this Mortgage, shall become immediately due and payable, and shall bear interest at the highest lawful rate specified in any note evidencing any indebtedness secured by this Mortgage. Mortgagee shall have no obligation to care for and maintain the Mortgaged Property, or, having taken some measures therefor, to continue the same or take other measures.

10.     Hazard Insurance.     If any buildings or other improvements now or hereafter constitute part of the Mortgaged Property, Mortgagor shall keep the same insured against loss or damage by fire, lightning, flood, windstorm and other perils customarily insured against, or as may be reasonably required from time to time by written direction of Mortgagee, in the full insurable value thereof (or such lesser amount as the Mortgagee may authorize from time to time), with a responsible insurance company or companies licensed to do business in the State of Florida and to which Mortgagee has no reasonable objection.   The policy or policies of insurance shall contain a standard mortgagee clause in favor of Mortgagee and such policy or policies, or other satisfactory evidence of such insurance, shall be delivered to Mortgagee prior to or concurrently with Mortgagor's execution and delivery of this Mortgage.  Mortgagor shall pay all premiums and charges for the maintenance and renewal of the insurance, and shall furnish Mortgagee with receipts and proof of payment thereof not less than ten (10) days before the expiration of the applicable policy.  If Mortgagor fails to do so, then Mortgagee, without waiving the option to foreclose, may obtain such insurance for the protection of Mortgagee, and any expenses reasonably incurred by Mortgagee in so doing shall become part of the indebtedness secured by this Mortgage, shall become immediately due and payable, and shall bear interest at the highest lawful rate specified in the Note.  In the event of loss, the insurance proceeds shall be applied by Mortgagee to the reduction of the indebtedness secured hereby, or to the restoration and repair of the Mortgaged Property, at the sole option of Mortgagee.  In the event of fore-closure of this Mortgage or transfer of the Mortgaged Property in full or partial satisfaction of the indebtedness secured hereby, all interest of Mortgagor in the policy or policies of insurance (including any claim to proceeds attributable to losses theretofore occurring but not yet paid to Mortgagor) shall pass to the purchaser, grantee, or transferee.

11.     Rents and Profits.   This Mortgage shall extend to and encumber all rents, issues, profits, proceeds, and revenues derived from the Mortgaged Property, but Mortgagor may receive the same while this Mortgage is not in default.

12.     Receiver.   If an event of default shall have occurred under this Mortgage, the Note or any other documents relating to the loan evidenced by the Note, Mortgagee, to the extent permitted by law and without regard to the value, adequacy or occupancy of the security for the

3

indebtedness and other sums secured hereby, shall be entitled as a matter of right, if it so elects, to the appointment of a receiver to enter upon and take possession of the Mortgaged Property and to collect all rents thereof and apply the same as the court may direct and any such receiver shall be entitled to hold, store, use, operate, manage and control the Mortgaged Property and conduct business therefrom. The expenses, including receiver's fees, attorneys' fees, costs and agent's compensation, incurred pursuant to the powers herein contained shall be secured by this Mortgage. The right to enter and take possession of, to collect all rent, income and other benefits from, and to manage and operate the Mortgaged Property by a receiver shall be cumulative to any other right or remedy hereunder or afforded by law and may be exercised concurrently therewith or independently thereof. Mortgagee shall be liable to account only for such rents, income and other benefits actually received by Mortgagee. Notwithstanding the appointment of any receiver or other custodian, Mortgagee shall be entitled as   ledge to the possession and control of any cash, deposits or instruments at the time held by, or payable or deliverable pursuant to the terms of this Mortgage to, Mortgagee.

The assignment of rents contained in this Mortgage is intended to and constitutes an assignment of rents as contemplated in Florida Statutes Section 697.07. Upon the occurrence of an event of default under this Mortgage, the Note or any other documents relating to the loan evidenced by the Note, Mortgagee shall be entitled to the remedies provided in said Section 697.07. In addition to the rights which Mortgagee may have herein, in the event of any default under this Mortgage, the Note or any other documents relating to the loan evidenced by the Note, Mortgagee, at its option, may require Mortgagor to pay monthly in advance to Mortgagee, or any receiver appointed to collect the rents, the fair and reasonable rental value for the use and occupation of such part of the Mortgaged Property as may be in the possession of Mortgagor. Upon default in any such payment, Mortgagor shall vacate and surrender possession of the Mortgaged Property to Mortgagee, or to such receiver and, in default thereof, Mortgagor may be evicted by summary proceedings or otherwise.

13.   <u>Taxes, Assessments, and Liens.</u>  Mortgagor shall pay all taxes, assessments, liens, and other charges upon or with respect to the Mortgaged Property before the same become delinquent, and shall furnish Mortgagee with receipts and proof of payments thereof at least ten (10) days before the last day allowed for payment free from penalty, without notice or demands from Mortgagee. If Mortgagor fails to do so, then Mortgagee, without waiving the option to foreclose, may pay the same, and the amount so paid shall become part of the indebtedness secured by this Mortgage, shall become immediately due and payable, and shall bear interest at the highest lawful rate specified in the Note.

14.   <u>Inspection.</u>  Mortgagee and Mortgagee's representatives may enter upon the Mortgaged Property for inspection at all reasonable times and in a reasonable manner, both before and after default.

15.   <u>Eminent Domain.</u>  This Mortgage extends to and shall encumber any judgments, awards, damages, and settlements hereafter rendered or paid and resulting from condemnation proceedings with respect to the Mortgaged Property or the taking of the Mortgaged Property or any part thereof under the power of eminent domain, and Mortgagee may require, in Mortgagee's sole discretion, that any sums payable to Mortgagor and arising out of the power of

4

eminent domain with respect to the Mortgaged Property shall be applied to the indebtedness secured hereby.

16.   <u>Enforcement and Collection Expenses.</u>   Mortgagor shall pay all expenses, including attorneys' fees and costs, reasonably incurred by Mortgagee with respect to collection of the indebtedness secured hereby or enforcement of Mortgagee's rights hereunder (including foreclosure or other litigation expenses and any post-judgment collection proceedings) arising out of any default by Mortgagor, and the amount thereof shall become part of the indebtedness secured hereby, shall become immediately due and payable, and shall bear interest at the highest lawful rate allowed under applicable law.

17.   <u>Acceleration Upon Default.</u>   If Mortgagor fails to pay any indebtedness secured hereby promptly when due (or within such grace period as may be provided in the Note), or if Mortgagor defaults hereunder, then Mortgagee may declare all indebtedness secured hereby to be accelerated and immediately due and payable. Mortgagee's failure to declare an acceleration shall not impair the right to do so in the event of a continuing or subsequent breach or default.

18.   <u>No Waiver.</u>   No delay by Mortgagee in exercising any option, right, or remedy hereunder or otherwise afforded by law, shall waive or preclude the exercise thereof during the continuance of any breach or default hereunder. No waiver by Mortgagee of any provision, breach, or default shall be a waiver of any other provision or a consent to any subsequent breach or default.

19.   <u>Default under Other Mortgages.</u> If the Mortgaged Property or any part thereof is now or hereafter encumbered by one or more other mortgages that are superior to this Mortgage, then any default thereunder shall be a default under this Mortgage, and Mortgagee, without waiving the option to foreclose, may take such measures that Mortgagee reasonably deems necessary to remedy such default, and all funds advanced for such purpose shall become part of the indebtedness secured hereby, shall become immediately due and payable, and shall bear interest at the highest lawful rate specified in any note evidencing any indebtedness secured hereby. Mortgagee shall have no obligation to take any measures to remedy any such default, or, having taken some measures therefor, to continue the same or take other measures.

20.   <u>Extensions, Leniencies, and Releases.</u>   Mortgagee may grant extensions of time for payment and other leniencies with respect to any indebtedness secured hereby, and may waive or fail to enforce any of Mortgagee's rights hereunder, and may release a portion or portions of the Mortgaged Property from the lien hereof, without releasing or diminishing the obligation or liability of any person constituting Mortgagor, or any guarantor or endorser.

21.   <u>Satisfaction.</u>   Whenever there is no outstanding indebtedness or other obligation secured hereby, Mortgagee shall deliver a satisfaction of this Mortgage to Mortgagor, in recordable form.

22.   <u>Hazardous Substances.</u> Mortgagor shall not cause or permit the presence, use, disposal, storage or release of any hazardous substances on or in the Mortgaged Property. Mortgagor shall not do, or allow anyone else to do, anything affecting the Mortgaged Property that is in violation of any environmental law.

23.    General Provisions.  The singular shall include the plural and any gender shall be applicable to all genders when the context permits or implies.  If more than one person constitutes Mortgagor, their covenants and obligations hereunder shall be joint and several.  If Mortgagor sells or transfers the Mortgaged Property, Mortgagee may deal with the successor or successors in interest without in any way discharging or reducing Mortgagor's liability for Mortgagor's obligations secured hereby.  Mortgagee's rights expressed herein are in addition to and cumulative of any other rights and remedies provided by law.  The terms "Mortgagor" and "Mortgagee" shall extend to and include their respective heirs, legal representatives, successors and assigns.  Any agreement hereafter made by Mortgagor and Mortgagee pursuant to this Mortgage shall be superior to the rights of the holder of any intervening lien or encumbrance.  Time is of the essence.  This Mortgage shall be governed by the laws of the State and Florida.  THE PARTIES IRREVOCABLY WAIVE ANY RIGHT TO HAVE A JURY PARTICIPATE IN RESOLVING ANY DISPUTE BETWEEN THEM ARISING OUT OF OR IN ANY WAY RELATED TO THIS MORTGAGE.  All notices to be delivered under this Mortgage shall be in writing and shall be deemed to have been given (i) when delivered by hand, (ii) the day following the day on which the notice has been delivered prepaid to a reputable express mail or courier service, or (iii) the third business day following the day on which the notice is sent by registered or certified mail, postage prepaid.  All notices shall be delivered to the addresses of the parties set forth on the first page of this Mortgage or to such other address as the party shall have last designated by written notice to the other party.  If any portion of this Mortgage is declared void by any court as illegal or against public policy the remainder of the instrument in question shall continue in full effect.

24.    Nontransferability.  In the event of the sale, conveyance, assignment or transfer of the Mortgaged Property in any manner without the prior written consent of the Mortgagee, then Mortgagee shall have the absolute right to declare a default under the Guaranty and Note and the entire remaining principal balance under the Note to be immediately due and payable without notice; and as a condition to granting of the Mortgagee's consent, the Mortgagee may require any one or more of the following: an increase in the interest rate, a transfer fee, a partial prepayment of the indebtedness, or such other terms, conditions and provisions, including a modification of this Mortgage and Note, as Mortgagee shall deem advisable in the Mortgagee's sole and exclusive judgment.

25.    Third Mortgage.  The lien of this Mortgage is junior, inferior and subordinate to the lien of that certain (i) Mortgage to Wells Fargo Bank, N.A. recorded in Official Records Book 9367, Page 2559 of the Public Records of Orange County, Florida, and (ii) Mortgage to Wells Fargo Bank, N.A. recorded in Official Records Book 10182, Page 7279 of the Public Records of Orange County, Florida (each a "**Prior Mortgage**").  In the event the Mortgagor shall accept from the holder of either Prior Mortgage a future advance, such acceptance shall constitute a default under this Mortgage, and Mortgagee shall have all the rights and remedies granted to the Mortgagee hereunder, the Note, Guaranty and all other documents related to the Loan.  In addition to and not in lieu of the rights and remedies conferred upon the Mortgagee in the preceding sentence, any future advance which may be made under any Prior Mortgage is hereby assigned to the Mortgagee, and any such future advance shall be paid directly to the Mortgagee and applied by the Mortgagee upon the unpaid principal balance of the indebtedness due under the Note.

26.   **Small Business Administration.**

THE LOAN SECURED BY THIS LIEN WAS MADE UNDER A UNITED STATES SMALL BUSINESS ADMINISTRATION (SBA) NATIONWIDE PROGRAM WHICH USES TAX DOLLARS TO ASSIST SMALL BUSINESS OWNERS.  IF THE UNITED STATES IS SEEKING TO ENFORCE THIS DOCUMENT, THEN UNDER SBA REGULATIONS:

(A) WHEN SBA IS THE HOLDER OF THE NOTE, THIS DOCUMENT AND ALL DOCUMENTS EVIDENCING OR SECURING THE LOAN WILL BE CONSTRUED IN ACCORDANCE WITH FEDERAL LAW.

(B) LENDER OR SBA MAY USE LOCAL OR STATE PROCEDURES FOR PURPOSES SUCH AS FILING PAPERS, RECORDING DOCUMENTS, GIVING NOTICE, FORECLOSING LIENS, AND OTHER PURPOSES.   BY USING THESE PROCEDURES, SBA DOES NOT WAIVE ANY FEDERAL IMMUNITY FROM LOCAL OR STATE CONTROL, PENALTY TAX OR LIABILITY.   NO BORROWER OR GUARANTOR MAY CLAIM OR ASSERT AGAINST SBA ANY LOCAL OR STATE LAW TO DENY ANY OBLIGATION OF BORROWER, OR DEFEAT ANY CLAIM OF SBA WITH RESPECT TO THIS LOAN.

ANY CLAUSE IN THIS DOCUMENT REQUIRING ARBITRATION IS NOT ENFORCEABLE WHEN SBA IS HOLDER OF THE NOTE SECURED BY THIS INSTRUMENT.

*[Signature on the Following Page]*

IN WITNESS WHEREOF, Mortgagor has executed this Mortgage as of the Effective Date.

Signed in the presence of the following two witnesses:

Print Name: BONNIE GOMES

MICHAEL T. SHEPARDSON

Print Name: Martha Rabbitt

STATE OF FLORIDA
COUNTY OF Hillsborough

The foregoing instrument was acknowledged before me this 17th day of February, 2015, by Michael T. Shepardson, a single man, who is ☐ personally known to me or who ☒ produced Florida Driver's License as identification.

*(AFFIX NOTARY SEAL)*

NOTARY PUBLIC, State at Large

Chyrl A. Lehmann
(Type or print name of Notary)

My Commission expires: March 4, 2018

CHYRL A. LEHMANN
Notary Public - State of Florida
My Comm. Expires Mar 4, 2018
Commission # FF 094600

8

**Exhibit "A"**

Lot 45, WINDSONG – ELIZABETH'S WALK, according to the map or plat thereof as recorded in Plat Book 43, Page 81, Public Records of Orange County, Florida.

# Exhibit "D"

**IN THE CIRCUIT COURT**
**OF THE NINTH JUDICIAL CIRCUIT**
**IN AND FOR ORANGE COUNTY, FLORIDA**
**CIVIL DIVISION**

Case No:  2018-CA-008717-O

VALLEY NATIONAL BANK, as
successor by merger to USAmeriBank,

      Plaintiff,

v.

PACA FOODS, LLC, a Florida limited liability
company, MICHAEL T. SHEPARDSON,
individually and as Trustee of the MICHAEL
T. SHEPARDSON AMENDED AND
RESTATED TRUST, DATED AUGUST 29,
2010, AS AMENDED, MICACOL
HOLDINGS, LLC, a Florida limited liability
company, AMERICAN EXPRESS
CENTURION BANK CORPORATION, a
Utah state chartered bank, WINDSONG
COMMUNITY ASSOCIATION, INC., a
Florida not for profit corporation, GJC
INTERESTS OF FLORIDA LIMITED
PARTNERSHIP, a Nevada limited partnership,
UNKNOWN SPOUSE OF MICHAEL T.
SHEPARDSON, and UNKNOWN
TENANT(S) IN POSSESSION,

      Defendants.

_____/

**ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY FINAL**
**JUDGMENT AS TO COUNTS I-V AND VIII-XI OF THE COMPLAINT**
**AND**
**SUMMARY FINAL JUDGMENT AGAINST**
**DEFENDANT, PACA FOODS, LLC (AS TO COUNTS I AND VIII) AND AGAINST**
**DEFENDANT, MICACOL HOLDINGS, LLC (AS TO COUNTS IV AND XI)**

This cause came before the Court on July 16, 2019 for hearing on Plaintiff's Motion for Summary Judgment as to Counts I-V and VIII-XI of the Complaint ("Motion"). The Court having reviewed the court file, the Motion and affidavits, heard argument from counsel, and otherwise being fully advised in the premises, is it hereby ORDERED and ADJUDGED as follows:

1.      The Motion is GRANTED IN PART.[1]

2.      As to Counts I and VIII of the Complaint, the Motion is GRANTED, and on these counts, this Court enters final judgment in favor of Plaintiff, VALLEY NATIONAL BANK, as successor by merger to USAmeriBank, and against Defendant, PACA FOODS, LLC.

3.      Plaintiff, VALLEY NATIONAL BANK, as successor by merger to USAmeribank (whose address is 1700 Palm Beach Lakes Blvd., Suite 1000, West Palm Beach, FL 33401), shall recover from Defendant, PACA FOODS, LLC (FEIN: ▪▪▪▪4780; whose address is: 5212 Cone Road, Tampa, FL 33610), the total judgment amount of **$2,766,935.70**, which is calculated as follows:

| | |
|---|---|
| **Term Note** | |
| Principal | $1,899,851.10 |
| Accrued Pre-Judgment Interest (2/1/18-7/24/19) | $224,854.52 |
| TOTAL = | $2,124,705.62 |
| **Amended CAPLine Note** | |
| Principal | $572,044.61 |
| Accrued Pre-Judgment Interest (2/1/18-7/24/19) | $66,875.47 |
| TOTAL = | $638,920.08 |
| **Recoverable Expenses** | $3,310.00 |
| **TOTAL JUDGMENT AMOUNT =** | **$2,766,935.70** |

[1] No findings or adjudication has been made concerning Defendants, MICHAEL T. SHEPARDSON, individually or as Trustee of the MICHAEL T. SHEPARDSON AMENDED AND RESTATED TRUST, DATED AUGUST 29, 2010, AS AMENDED, or as to Counts II, III, V, IX or X of the Complaint in light of that Chapter 7 bankruptcy case styled, *In re Michael T. Shepardson,* Case No. 6:19-bk-04573-KSJ, filed July 15, 2019 in the United States Bankruptcy Court, Middle District of Florida, Orlando Division.

The foregoing total judgment amount shall bear interest at the rate of 6.77% per year initially and thereafter as provided for by § 55.03, Florida Statutes, **for all of which let execution issue.**

4.      As to Counts IV and XI of the Complaint, the Motion is GRANTED, and on these counts, this Court enters final judgment in favor of Plaintiff, VALLEY NATIONAL BANK, as successor by merger to USAmeriBank, and against Defendant, MICACOL HOLDINGS, LLC.

5.      Plaintiff, VALLEY NATIONAL BANK, as successor by merger to USAmeriBank (whose address is 1700 Palm Beach Lakes Blvd., Suite 1000, West Palm Beach, FL 33401), shall recover from Defendant, MICACOL HOLDINGS, LLC (FEIN: ▮▮▮▮5544; whose address is 1635 Elizabeth's Walk, Winter Park, FL 32789), the total judgment amount of **$2,766,935.70**, which is calculated as follows:

| | |
|---|---|
| **Term Note** | |
| Principal | $1,899,851.10 |
| Accrued Pre-Judgment Interest (2/1/18-7/24/19) | $224,854.52 |
| TOTAL = | $2,124,705.62 |
| **Amended CAPLine Note** | |
| Principal | $572,044.61 |
| Accrued Pre-Judgment Interest (2/1/18-7/24/19) | $66,875.47 |
| TOTAL = | $638,920.08 |
| **Recoverable Expenses** | $3,310.00 |
| **TOTAL JUDGMENT AMOUNT =** | **$2,766,935.70** |

The foregoing total judgment amount shall bear interest at the rate of 6.77% per year initially and thereafter as provided for by § 55.03, Florida Statutes, **for all of which let execution issue.**

6.      Plaintiff is also entitled to recover its reasonable attorneys' fees and costs from Defendants, PACA FOODS, LLC and MICACOL HOLDINGS, LLC.   The Court retains jurisdiction to determine the amount of reasonable attorneys' fees and costs recoverable by Plaintiff.

7.    It is further ordered and adjudged that Defendants, PACA FOODS, LLC and MICACOL HOLDINGS, LLC, shall complete Florida Rule of Civil Procedure Form 1.977(b) – Fact Information Sheet for Corporations, and that the Defendants shall return the completed forms to Plaintiff's attorney within forty-five (45) days from the date of this final judgment, unless the final judgment is satisfied or a motion for new trial or notice of appeal is filed. Defendants should NOT file the completed forms with the court.

8.    Jurisdiction of this case is retained to enter further orders that are proper to compel the Defendants to complete the Fact Information Sheets and return them to Plaintiff's attorney, to otherwise compel compliance with post-judgment discovery obligations, to adjudicate the remaining counts of the Complaint, to determine the amount of attorneys' fees and costs to be awarded Plaintiff, and to enter such other and further orders as are appropriate.

DONE and ORDERED in Chambers in Orange County, Florida this 1st day of August 2019.

_____
Chad K. Alvaro
Circuit Judge

Copies to:
Casey Reeder Lennox, Esq., Lennox Law, P.A., 5100 W. Kennedy Blvd., Ste. 120, Tampa, FL 33609
John E. Johnson, Esq., Johnson, Cassidy, Newlon & DeCort, P.A., 324 Hyde Park Ave., Ste. 325, Tampa, FL 33606
Nicolette C. Vilmos, Esq., Nelson Mullins Broad and Cassel, 390 N. Orange Ave, Ste. 1400, Orlando, FL 32801
American Express Centurion Bank Corporation, 4315 South 2700 West, Salt Lake City, Utah 84184
American Express Centurion Bank Corporation, Attn: Michelle Fowler, 1108 E. South Union Avenue, Midvale, UT 84047
Windsong Community Association, Inc., c/o Leland Management, Registered Agent, 6972 Lake Gloria Blvd., Orlando, FL 32809-3200

4

# Exhibit "E"

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

In re:

MICHAEL T. SHEPARDSON,                      Case No.: 6:19-bk-04573-KSJ
                                            Chapter 7
     Debtor.

_____/


<u>**AFFIDAVIT AS TO SURRENDERED PROPERTY**</u>

**STATE OF FLORIDA**
**COUNTY OF HILLSBOROUGH**


     **BEFORE ME,** the undersigned authority, personally appeared Casey Reeder Lennox, who after having been duly sworn, deposes and says as follows:

     1.     I am counsel of record for VALLEY NATIONAL BANK, as successor by merger to USAMERIBANK ("Secured Creditor") in the above styled case.

     2.     This affidavit is being filed in support of the Motion for Relief from Automatic Stay filed in this case by the Secured Creditor.

     3.     I have personally reviewed the Debtor's *Statement of Intention for Individuals Filing Under Chapter 7* (Doc. No. 15, Page 37) which states that the Debtor intends to surrender the real property located at 1635 Elizabeth's Walk, Winter Park, Florida 32789, and more particularly described as:

     Lot 45, WINDSONG – ELIZABETH'S WALK, according to the map or plat thereof as recorded in Plat Book 43, Page 81, Public Records of Orange County, Florida.

     4.     As of the date of this Affidavit, I have examined the CM/ECF docket for this case and have found no entries evidencing a contrary intent on the part of the Debtor.

1

**FURTHER AFFIANT SAYETH NOT.**

_____
Casey Reeder Lennox

**STATE OF FLORIDA**
**COUNTY OF HILLSBOROUGH**

Sworn to and subscribed before me this 12th day of September 2019, by Casey Reeder Lennox, who is personally known to me.

_____
(Notary Public Signature)

Notary Public State of Florida
Jennifer Seifried
My Commission GG 187354
Expires 06/09/2022

2